THE VOLUNTEERS OF AMERICA *et al.* Defendants in Error, *vs.* DANIEL A. PEIRCE *et al.*—(MARIA L. COX *et al.* Plaintiffs in Error.)

*Opinion filed February 17, 1915—Rehearing denied April 8, 1915.*

1. WILLS—*charitable bequest to a beneficiary not in existence is same as though no beneficiary were named.* A charitable bequest of a specific portion of the residuary estate to the "Buchanan Anti-Saloon League of Buchanan, Michigan," cannot be sustained, where no such association or society was in existence at the death of the testatrix and where the bequest is a direct gift, without the creation of any trust other than that the trustee of the entire residuary estate was to make the distribution when the time for distribution arrived.

2. SAME—*what is essential before the liberal rules of construction applicable to bequests to charity can be applied.* Before resort can be had to the liberal rules of construction applicable to bequests to charity, the object of the gift must be certain or some one must be appointed by the will with power to render the object certain.

3. SAME—*when a gift for charitable purposes is not to a class.* Where the testatrix devises her residuary estate in trust, with directions to the trustee to divide it equally among six named institutions or societies, the fact that all of the beneficiaries are engaged in charitable work does not make the gift a gift to a class, and in case one of the named beneficiaries has no existence, the bequest to such beneficiary does not pass in equal shares to the other named beneficiaries but the same will descend as intestate property to the heirs of the testatrix.

4. SAME—*fixing of an inheritance tax is not an adjudication of rights of parties under the will.* The order of the county judge fixing an inheritance tax upon a testate estate is not an adjudication of the rights of the parties under the will.

5. SAME—*when order approving report of executor is not conclusive against heirs.* Where the executor, who is also the trustee of the residuary estate, has administered the estate with the exception of distributing the residuary estate, which is to be divided equally among six named institutions or societies engaged in charitable work, the approval of the executor's final report is not conclusive against the heirs as to their right to take, as intestate estate, a share of the residuary estate bequeathed to a beneficiary having no existence at the death of the testatrix.

Writ of Error to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Richard E. Burke, Judge, presiding.

John S. Stevens, for plaintiffs in error.

William A. Barnes, for defendant in error the Buchanan Anti-Saloon League; James J. Barbour, for the Volunteers of America; Shortall & Murison, and Thomas Taylor, Jr., for the Illinois Humane Society; Bayley & Webster, for the Old People's Home; Holt, Cutting & Sidley, for the Home for the Friendless; Bentley, Burling & Swan, and Preston Kumler, for the Young Men's Christian Association of Chicago.

Mr. Justice Farmer delivered the opinion of the court:

The question presented for decision in this case is the determination of the rightful claimant to one-sixth of the residuary estate of Sarah A. Hawley. Mrs. Hawley, a widow, executed her will June 25, 1909. She died April 19, 1910, leaving an estate of the value of $226,000, and her will was admitted to probate in the probate court of Cook county May 25, 1910. She left surviving her as her next of kin and only heirs-at-law, two sisters, two nephews, a grand-nephew and a grand-niece. By her will she gave to her sister Maria L. Cox $10,000, to her sister Rebecca J. Powers she gave $8000, to her two nephews who were her heirs, James and William Maitland, she gave $4000 each, and to her grand-nephew and grand-niece who were her heirs she gave $250 each. Bequests were made to other relatives of the testatrix not her heirs, and to some others. The greater portion of the estate of testatrix was disposed of in the residuary clause of her will, which is as follows:

"I hereby give, devise and bequeath all the rest, residue and remainder of my estate, of every name and nature whatsoever, that I may die possessed of or be entitled to

at the time of my death, to my executor and trustee here-
inafter named, in trust for the following named institu-
tions, societies or organizations, viz.: The Illinois Humane
Society of the city of Chicago, in said county of Cook and
State of Illinois; the Old People's Home, now situated
at or near the corner of Indiana avenue and Thirty-ninth
street, in the city of Chicago, in the county of Cook and
State of Illinois; the Volunteers of America, now located
at 184 Dearborn street, in said city of Chicago; the Home
of the Friendless, now located at Vincennes avenue and
Fifty-first street, in the city of Chicago, county of Cook and
State of Illinois; the Buchanan Anti-Saloon League, of
said Buchanan, Michigan; the Young Men's Christian As-
sociation of said Buchanan, Michigan, if there shall be in
existence at the time of my death in said Buchanan, Michi-
gan, an organization of that name.    If there shall not be
an organization of that name in existence in said Buchanan
at the time of my death, then to the Young Men's Christian
Association of said city of Chicago, to be divided equally
among said above named institutions, societies or organi-
zations, it being my intention that each one of the same
shall receive an equal share of the residue of my estate."

Daniel A. Peirce was appointed by the will as executor
and trustee, and was given full power to sell and dispose
of all or any portion of the estate, to change its form and
invest or re-invest the proceeds. Peirce duly qualified as
executor, administered the estate, made his final report as
executor, and was discharged as such executor by order of
the probate court on November 10, 1911.    In his said final
report he stated that the residuary estate was undistributed
and still remained in his hands, as trustee, because of the
fact that there was some controversy about whether there
was any young men's christian association in Buchanan,
Michigan, and whether there was any anti-saloon league at
that place entitled to share in the residuary estate under
the will.    Previous to the approval of the final report of

Peirce and his discharge as executor the Volunteers of America, one of the residuary legatees, filed its bill in the superior court setting up that there was no controversy as to its being entitled to one-sixth of the residuary estate, and praying that the executor and trustee be required to pay it immediately said one-sixth without regard to the dispute or controversy as to who was entitled to the other portions of the residuary estate. It is unnecessary to recite a history of the complicated pleadings upon which the issue finally tried was made, as no question is raised as to the sufficiency of the pleadings. By answer and cross-bill of the executor and trustee, answers of the defendants to the cross-bill and replications to the answers, the issues finally made and presented for determination were, (1) whether the Anti-Saloon League of Buchanan, Michigan, was entitled to one-sixth of the residuary estate; and (2) whether, in the event of it not being entitled to said share, said one-sixth should be distributed equally to the other five residuary legatees or whether it was to be considered intestate estate and distributed to the heirs-at-law of the testatrix. The superior court decreed that the testatrix intended to dispose of her entire estate; that she bequeathed her residuary estate to Daniel A. Peirce, as trustee, for charitable purposes; that the beneficiaries of her residuary estate named by her were charitable organizations and societies constituting a class by themselves, and were entitled to the fund as a class and not as individuals; that there was no Buchanan Anti-Saloon League in existence at the time of the death of testatrix, and that the other five residuary beneficiaries named were entitled to have their shares proportionately increased by adding to them the one-sixth bequeathed to the Buchanan Anti-Saloon League. The decree ordered one-fifth of the residuary estate in the hands of the trustee to be paid by him to the Illinois Humane Society, one-fifth to the Old People's Home of the city of Chicago, one-fifth to the Chicago Home for the Friendless, one-fifth to the

Young Men's Christian Association of Chicago and one-fifth to the Volunteers of America. From that decree separate appeals were prosecuted by the Buchanan Anti-Saloon League and the heirs of the testatrix to the Appellate Court for the First District. That court held that there was a Buchanan Anti-Saloon League in existence capable of taking the bequest and reversed the decree and remanded the cause to the superior court, with directions to enter a decree directing the payment of one-sixth of the residuary estate to said Buchanan Anti-Saloon League. On the petition of the heirs of Sarah A. Hawley and the residuary legatees other than the Buchanan Anti-Saloon League the record is brought to this court for review by writ of *certiorari.*

While there was originally some controversy whether there was a Young Men's Christian Association of Buchanan, Michigan, in existence at the time of the death of testatrix, that controversy was abandoned, and it is not disputed that the one-sixth bequeathed to the Young Men's Christian Association of Buchanan should be paid to the Young Men's Christian Association of the city of Chicago. It was stipulated between the parties just before the entry of the decree in the superior court, that the trustee should pay out of the residuary estate in his hands certain costs, stenographer's fees, solicitors' fees and trustee's compensation, and retain one-sixth of the remainder, plus $5000, until it was finally determined whether the heirs of the testatrix or the five other residuary legatees other than the Buchanan Anti-Saloon League were entitled to said fund, and that the remainder of the residuary estate in the hands of the trustee be divided into five equal parts and one part be paid to each of the five residuary legatees other than the Buchanan Anti-Saloon League.

The facts proved on the hearing and relied upon by the Buchanan Anti-Saloon League to establish its existence are fully and fairly set forth in paragraph 9 of the decree of the superior court, which we here copy in full:

"The court further finds that the Buchanan Anti-Saloon League of Buchanan, Michigan, named in the last will and testament of the said Sarah A. Hawley, deceased, as a beneficiary in the trust fund bequeathed to Daniel A. Peirce, trustee, as aforesaid, was not a corporation; that a public meeting in the Presbyterian church in said town was held on the 28th day of February, 1909, for the purpose of assisting in carrying on a campaign for local option, so-called, in Berrien county, Michigan, at an election then ensuing in April, 1909; that at said meeting on February 28, 1909, there was elected a president, a secretary, a treasurer and a committee to solicit funds for the campaign expenses; that the meeting adopted the name 'Buchanan Local Option League,' and its committee collected a small amount of money, which the treasurer deposited in a bank to the credit of the Buchanan Anti-Saloon League, which deposit was drawn on from time to time and all used for said campaign purposes, the names 'Buchanan Local Option League' and 'Buchanan Anti-Saloon League' being used, to some extent, interchangeably. The court further finds that there was no incorporation of said society or association; that it had no by-laws; that it at no time had or maintained an office or trustee, and that at no time was there a roll of members nor any definite membership acting under said meeting of February 28, 1909. The court further finds that the meeting so held on February 28, 1909, made no provision for subsequent meetings or for the election of officers of any kind at any time, and that the said meeting of February 28, 1909, was the only meeting called or held by the persons participating therein, under the name of 'Buchanan Local Option League,' or 'Buchanan Anti-Saloon League,' or a like name, prior to the death of Sarah A. Hawley, deceased; that local option, so-called, was the question whether saloons should be allowed to exist in Berrien county, Michigan, of which county the said town of Buchanan was a part, and that question was submitted to

the voters of that county at the spring election held in April, 1909, and the said meeting of February 28, 1909, where the so-called Buchanan Anti-Saloon League meeting was held, was for the purpose of assisting in the campaign leading up to that election. The court further finds that the aims and objects of said society were temporary in character and came within the legal definition of charitable purposes, and that the purpose of the meeting and the work of the committee and officers of said Buchanan Anti-Saloon League were at an end when the said election in the spring of 1909 was over. The court further finds that at the time of the decease of the said Sarah A. Hawley there was not in existence any such organization or society as the Anti-Saloon League of Buchanan, Michigan, capable of taking the attempted bequest proposed by said will of the said Sarah A. Hawley, deceased, to it, under said name of Buchanan Anti-Saloon League, or any other name."

The anti-saloon league insists that part of the decree is wrong and contrary to the evidence, that the proof established its existence at the death of testatrix, and that it was capable of taking the gift as a beneficiary. It also insists that the bequest was a gift to charity and should be sustained as such. We agree with the superior court that the proof failed to show the existence of any such association or society as the Buchanan Anti-Saloon League. To our minds it fell far short of the necessary elements to establish the existence of such association or organization at the death of the testatrix. The bequest cannot be sustained on the ground that it is a gift to charity. It is true, as contended, that courts indulge in very liberal construction when dealing with gifts to charity. If it be conceded the testatrix intended to dispose of her residuary estate to charitable uses and purposes and that a gift to an organization or association engaged in the work of suppressing saloons is a gift to a charitable purpose, still that is not the situation here presented. There was no such association or

organization as the Buchanan Anti-Saloon League in exist-
ence at Mrs. Hawley's death.   The will makes no provision
as to how the money shall be used, no trust is created, no
trustee appointed with power to direct the expenditure of
the money, and no power conferred upon anyone to make
an appointment.   The bequest is a direct gift of one-
sixth of the residuary estate to the Buchanan Anti-Saloon
League.   Naming a beneficiary not in existence is the same
as if no beneficiary had been named to take said one-sixth.
A charitable gift cannot be sustained where no beneficiary
is named and no person is appointed with power to select
the beneficiary.   Before resort can be had to the liberal con-
struction given bequests to charity by this court in *Heuser*
v. *Harris,* 42 Ill. 425, *Hunt* v. *Fowler,* 121 id. 269, *Welch*
v. *Caldwell,* 226 id. 488, *Hitchcock* v. *Board of Home Mis-
sions,* 259 id. 288, and other cases, the object of the gift
must be certain or someone must be appointed by the will
with power to render the object certain.   There must be
sufficient certainty in the will to enable the court, in the
exercise of its ordinary chancery powers, to carry out the
donor's charitable intent.   Here the gift was to the Buch-
anan Anti-Saloon League, without the creation of a trust
or the intervention of a trustee, except that it was to pass,
through the trustee appointed by the will, to the benefici-
ary when the residuary estate was ready for distribution.
There was no such organization or society in existence at
the death of testatrix, and the gift failed for that reason.
Some steps were taken to incorporate a society by the name
of Buchanan Anti-Saloon League after the death of tes-
tatrix, but the incorporation was never completed, and it
would have been ineffectual to render the gift valid if a
society by that name had then been incorporated.   (*Craw-
ford* v. *Cemetery Ass'n,* 218 Ill. 399.)   It is conceded in
the brief filed on behalf of the Buchanan Anti-Saloon
League that a gift takes effect at the death of the testator
or testatrix, and that no change, in form, of the donee as-

sociation after such death can affect the validity of the gift or the right to take. We think it beyond the powers of a court of chancery now to render the gift effective.

It remains to be determined whether the gift to the Buchanan Anti-Saloon League went to the heirs as intestate estate or to the other five residuary legatees. The latter contend that it was not the intention of the testatrix to die intestate as to any part of her estate; that she made all the provision she desired to make for her heirs and intended to give the residue of her estate to organizations or associations of a benevolent or charitable nature; that the gifts were to the legatees as a class, and that if one of the legatees was not in existence at the death of the testatrix or for any reason the gift to one failed, it should be equally divided among the other five. The determination of this question depends upon whether, by the terms of the will, the six beneficiaries of the residuary estate constitute a class, those in being and capable of taking at testatrix's death sharing the residuary fund in equal or definite fixed proportions.

"A gift to a class is defined by Mr. Jarman as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons." (*In re King's Estate,* 200 N. Y. 189; 93 N. E. Rep. 484.) In 40 Cyc. 1473, 1474, the author of the chapter on wills correctly sums up the weight of the authorities on this question as follows: "Whether a devise or a bequest is to a class or to the individuals constituting the class distributively, depends upon the language of the will. If from such language it appears that the number of persons who are to take and the amounts of their shares are uncertain until the devise or bequest takes effect, the beneficiaries will generally be held to take as a class; but where at the time of

making the gift the number of beneficiaries is certain, and the share each is to receive is also certain and in no way dependent for its amount upon the number who shall survive, it is not a gift to a class but to the individuals distributively; and this is generally held to be the case where the beneficiaries are named and their shares are certain." We find nothing in the language of the will which appears to indicate that the testatrix intended the residuary legatees to take as a class. The language of a will must disclose an intention to create a class, otherwise the beneficiaries will take distributively. (*In re Russell*, 168 N. Y. 169; 61 N. E. Rep. 166.) The will directs that the residuary estate be divided equally among the beneficiaries named, "it being my intention that each one of the same shall receive an equal share of the residue of my estate." In *Auger* v. *Tatham*, 191 Ill. 296, the seventh clause of the will bequeathed to four persons described as "the heirs-at-law of Lucy Auger, deceased," and in the same clause to four other persons, "each the sum of $25,000," to be paid to them by the executors after the testator's death. In a codicil the testator directed that the bequests by the seventh clause to two of the heirs-at-law of Lucy Auger and four other legatees named in the seventh clause be increased from $25,000 to $50,000 each, "said sum of $50,000 to be paid to each of the persons" named in the codicil in lieu of the sum of $25,000 named in the seventh clause of the will. It was contended by the heirs of the testator that the bequests to the persons described as the heirs-at-law of Lucy Auger, deceased, was a bequest to them, as a class, of $25,000, originally to be divided among them, which was increased to $50,000 by the codicil, to be divided among them, and was not a bequest to them individually. The court held the word "each" referred to the heirs of Lucy Auger as individuals and not as a class, and that two of them took $25,000 each under the seventh clause of the will and two of them $50,000 each under the codicil.

We think it clear from the authorities that the bequests of the residuary estate were not to a class, and that in no event could either of the legatees take more than one-sixth. It necessarily follows that the bequest to· the Buchanan Anti-Saloon League became intestate estate, and as such would descend to the heirs-at-law of the testatrix.

It is insisted the order of the county judge of Cook county approving the report of the appraisement of the estate of Mrs. Hawley for determining the inheritance tax and fixing said tax was an adjudication that the Buchanan Anti-Saloon League was entitled to take· under the will. The appraisement shows the description of the property, the beneficiaries in the will and their relationship. The Buchanan Anti-Saloon League is described as a beneficiary to the extent of one-sixth of the residuary estate, the value of which was found to be $24,905.57; that the Buchanan Anti-Saloon League was without statutory exemption and was liable to an inheritance tax in the sum of $1245.30. The rights of the parties under the will could not be, and were not, adjudicated and determined by the county judge, who had no jurisdiction of such matters. His only power was to determine the inheritance tax the estate was liable for. In doing that he acted as a taxing officer, and the order made did not affect the rights of the parties to the property. *Amherst College* v. *Ritch,* 151 N. Y. 282; 45 N. E. Rep. 876.

It is also insisted by the Volunteers of America, the Illinois Humane Society, the Old People's Home, the Home for the Friendless and the Young Men's Christian Association that the order of the probate court of Cook county upon the final report of the executor is conclusive against the right of the heirs to the fund in controversy. We think this position equally as untenable as the contention that the order of the county judge fixing the inheritance tax was an adjudication against the heirs. Daniel A. Peirce was both executor and trustee under the will. The residu-

ary estate was devised to him as executor, and as trustee he was required to receive the fund and hold it for the benefit of the residuary legatees until, as such trustee, he had settled with them. He administered the estate, settled and paid all claims and liabilities against the estate, including all bequests other than those made in the residuary clause of the will, so reported to the probate court, and asked to be discharged from any further duties as executor. His report showed the amount of the residuary estate in his hands as trustee. Notice of filing the report and of his intention to ask to be discharged as executor was given, as required by law. An order was entered by the probate court approving the report and discharging the executor. That court could not, and did not in that proceeding, do anything or make any order affecting the rights of the parties to or the distribution of the residuary estate, and the order was in no sense an adjudication against the heirs claiming as intestate estate that part of the residuary estate not disposed of by the will. No attempt was made by the probate court in that proceeding to construe the will and define the rights of the residuary legatees or anyone else claiming an interest in the fund in the hands of the trustee.

The judgment of the Appellate Court is reversed, and the decree of the superior court, in so far as it finds the Volunteers of America, the Illinois Humane Society, the Old People's Home, the Home for the Friendless and the Young Men's Christian Association of Chicago are entitled to the one-sixth of the residuary estate attempted to be bequeathed to the Buchanan Anti-Saloon League is reversed and the cause remanded to the superior court, with directions to enter a decree in accordance with the views herein expressed, awarding said one-sixth to the heirs of the said Sarah A. Hawley as intestate estate, to be distributed according to the laws of descent as in cases of intestacy.

*Reversed and remanded, with directions.*