First National Bank of Chicago, Trustee under the Will of Emaroy June Smith, Deceased, Appellee, v. American Board of Commissioners for Foreign Missions et al., Appellees, Chicago Congregational Union, Appellant et al.

Gen. No. 43,420.

482

Opinion filed April 24, 1946.   Released for publication May 10, 1946.

REX MACKENZIE, of Chicago, for appellant.

PETERS & DIXON, of Chicago, for certain appellee.

CHARLES L. COBB, of Chicago, for certain other appellees; GEORGE A. CHRITTON, of Chicago, of counsel.

MR. PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is an action by the Trustee Bank for, among other things, instructions upon the disposition of a charitable legacy under a will to the New England Congregational Church. That Church was out of existence when the first annuity due it was to be paid. The defendant, Chicago Congregational Union, also a beneficiary under the will, seeks the legacy under the *cy pres* doctrine. Several other defendants, likewise beneficiaries, seek the disputed legacy for the benefit of themselves and the other charitable legatees under the will. The trial court found against the Congregational Union and it has appealed.

Emaroy June Smith died April 22, 1941. In her will she created among other trusts the Emaroy June Benevolent Fund containing the residuary estate. She named 19 charitable residuary legatees. The N. E.

Congregational Church was one of these. To it she bequeathed an annuity of $1,000. The Church structure was destroyed by fire in 1936 and was never rebuilt. The Church Corporation was formally dissolved January 7, 1942. Since payment of annuities were not to commence until one year from the death of the testatrix, the Church was extinct when the first payment was due.

The decree found that the legacy to the Church had lapsed, to become part of the Benevolent Fund; that the *cy pres* doctrine did not apply; and that the intention of the testatrix was, that should any charitable residuary legatee cease to function, that legacy should inure to the benefit of the remaining charitable residuary legatees. The trustee was instructed to dispose of the annuity accordingly. The only defendants whose interests will be affected in this controversy are the remaining 18 charitable residuary legatees named in the will. Three of these do not oppose the claim of the Congregational Union. Six are joined as appellees. The Trustee Bank although indifferent in the controversy has filed a brief giving its views on the issue to this court as it gave them to the trial court.

The Congregational Union contends that the legacies to the Church vested upon the death of the testatrix before the dissolution of the Church Corporation, and could not lapse. The appellees say that whether the legacy did or did not lapse is not important, if the court correctly found on the question of the intention of the testatrix. They contend that if that finding is correct the annuity must inure to the benefit of the remaining charitable residuary legatees. The Bank's suggestions are in support of the finding of the trial court on the question of the intention of the testatrix. It says that *cy pres* doctrine is designed to prevent the failure of a charitable bequest and that, since under the court's construction of the will there

is no question of a charitable bequest failing, the doctrine is inapplicable.

The will, in the first several Articles, disposes of personal and real property and makes educational gifts and bequests of money. In Article VII several trusts are created. From one income for life is given to a beneficiary, at whose death the *corpus* is to be paid into the Benevolent Fund. From another several annuities are to be paid and as each terminates the part of the *corpus* from which that annuity came is also to go to the Benevolent Fund. In Article VIII a trust of $250,000 is established, known as the June Family Fund. The income from this fund is payable in annuities to members of the family of testatrix. As each annuity terminates that part of the *corpus* which produced it is, likewise, to be paid into the Benevolent Fund.

In Article IX, Section 1, the Benevolent Fund is established, consisting of the residuary estate and lapsed legacies. Section 2 provides annuities in perpetuity, from the income of the Benevolent Fund, of $1,000 to the N. E. Congregational Church and $500 to each of two colleges in foreign States. If the income from the Benevolent Fund, as originally constituted, be insufficient to pay these in full, it is to be prorated among the three.

Article X provides for 16 additional annuities "in perpetuity" in amounts ranging from $200 to $5,000 to charitable institutions. These annuities are to be paid out of the Benevolent Fund as and when "augmented" from the various trusts theretofore established in the will. These 16 beneficiaries are to receive payment "in full out of the first available income", in the order in which they are named. The Congregational Union is named third to receive an annuity of $5,000. In Section 2 of this Article the testatrix expressed her intention to dispose of the entire income of the Benevolent Fund. Under this

section, after all "augmentations" are made, payments to the 19 charitable institutions are to be increased or decreased proportionately as the income is greater or less than the annuities specified. Payments under Articles IX and X were to commence one year from the death of the testatrix.

Assuming, without deciding, that the bequest did not lapse because the Church was in existence at the time of the death of the testatrix, nevertheless, when the payments were to begin, the Church was not in existence. If the bequest vested, to whom should the annuity be paid? The Congregational Union answers that it should have the annuity under the *cy pres* doctrine.

In *Board of Education v. City of Rockford*, 372 Ill. 442, the Supreme Court approved the following definition of the *cy pres* doctrine as of "admirable clarity": "If property is given in trust to be applied to a particular charitable purpose and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." The doctrine, however, does not apply if the settlor provides for the application of the fund in the event of the failure of the purpose first intended. 14 C. J. S. p. 516. If the annuity, therefore, can be disposed of according to the intention of the testatrix, there is no need for the court to apply the doctrine. Her intention, if not in contravention of some established rule of law or public policy, must be given effect. 40 Cyc. 1386.

The will makes provision to cover lapsed legacies, but no express provision to cover the event which has occurred. If there is an intention reasonably

implied, however, that will suffice. If we can see in the terms of the will the implied intention that where one of the charitable residuary legatees should cease to exist, the remaining charitable residuary legatees should be beneficiaries of that annuity, there is no fear that the general charitable purpose of the testatrix will suffer through failure of the particular bequest.

The Congregational Union points out that the will provided the annuity "to the following charitable enterprises", then naming the Church. It says that this indicates the intention of the testatrix was that the charitable enterprise of the Church, and not the Church, was the beneficiary. If this were so it would add weight to the main contention of the Congregational Union. Appellees say that if the purpose of the testatrix had been to benefit Congregationalism and not the Church, the gift would have been to the Congregational Union. In view of the fact that both the Congregational Union and the Church were made beneficiaries, both serving generally the same charitable enterprises, and in view of the many like bequests in Articles IX and X of the will to specific institutions, we believe that there is no merit to this contention. We find that the bequest was to the Church.

The general charitable intention of the testatrix is evident from her creation of the Benevolent Fund for the residuary and the provision for the eventual payments into it of the corpora of other trust funds in the will. The only residuary legatees to share in the income from this Fund are charitable institutions. The testatrix expressly provided that the entire income from this Fund was to be disposed of. Specific amounts were bequeathed. These amounts, however, were standards, rather than limits. She provided that when the Fund was finally "augmented" the residuary legacies would be increased or decreased

according to whether the income exceeded or fell below the amount necessary to meet all the residuary bequests. It seems clear that benefits from this Fund were to be limited to the charitable institutions named.

Beyond the fact that the Congregational Union was given the largest bequest, there is no distinction made between it and the other 18 beneficiaries under Articles IX and X. There is no express intention to prefer it over any of the others except that it is to be paid in full before those numbered below it while the fund is being "augmented". When "augumentations" are complete, however, it is to receive a proportionate share of the income in excess of that required for the payment of all specific residuary bequests, or suffer a proportionate loss in the event of a deficiency.

We believe that in view of the foregoing considerations, this is not a case for application of the *cy pres* doctrine. The court was right in ordering that the annuity to the Church should be made available to the remaining 18 charitable institutions. The case of *Volunteers of America v. Pierce*, 267 Ill. 406, cited by Congregational Union, does not preclude this conclusion. In the will in that case where five legatees were seeking distributive shares of the bequest to the sixth, there was a provision "that in no event could either of the legatees take more than one-sixth."

It is true that the particular charitable purpose that testatrix had in mind when she made the disputed legacy, has become impossible. There is no question here, however, of a loss to charity. The heirs at law and next of kin are not contending in this case for the annuity, as was the situation in most of the cases cited. The general intention of the testatrix in this will, moreover, is expressed in the provision for paying all of the income of the Benevolent Fund to 18 other charitable institutions named who were to bene-

fit proportionately, more or less, dependent upon the size of the residuary estate. That general purpose included the particular purpose which failed. There is no need for the court to substitute a charitable purpose for the one which has become impossible. The testatrix has provided the substitute. There is no need, therefore, to comment on the many cases cited upon the *cy pres* rule.

We need not consider whether the court correctly found that the legacy had lapsed. It correctly found that the testatrix intended that in the event which happened, the annuity should go to the benefit of the remaining charitable legatees.

For the reasons given the decree of the Circuit Court is affirmed.

*Decree affirmed.*

Lewe and Burke, JJ., concur.