The Chicago Daily News Fresh Air Fund, Plaintiff, v. Otto Kerner, Attorney General of State of Illinois, et al., Defendants.

John E. Cassidy, Successor to Otto Kerner, Attorney General of State of Illinois, Appellant, v. George H. Schneider et al., Appellees.

Gen. No. 40,880.

Heard in the first division of this court for the first district at the October term, 1939. Opinion filed May 20, 1940. Rehearing denied June 3, 1940.

JOHN E. CASSIDY, Attorney General, for appellant; WILLIAM C. CLAUSEN and THOMAS ROBERT MULROY, both of Chicago, of counsel.

TOLMAN & CHANDLER, of Chicago, for certain appellees; EDGAR B. TOLMAN and HENRY P. CHANDLER, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

As succinctly stated in the brief of Maud Kennicott Reid and Mabel B. Gleason, heirs of David E. Fiske, the issue in this case is whether a bequest under the will of David E. Fiske to the Chicago Daily News Fresh Air Fund, a charitable corporation, which the Fund has renounced, should go to the heirs as in case of intestacy, or should be awarded to some similar charity under the doctrine of *cy pres*.

The complaint was filed by the Chicago Daily News Fresh Air Fund, hereafter referred to as plaintiff, asking the court to determine what disposition should be

made of its interest in several funds bequeathed to it by David E. Fiske, but not yet received by it.

The bequests involved are two, payable out of the residuary estate of the testator: an annuity of $500, payable until the termination of certain other annuities, and, one-half of the principal of the residuary estate, payable upon the termination of these annuities.

George H. Schneider, trustee under the will of David E. Fiske, answered naming the heirs of Mr. Fiske and asked for instructions regarding the residuary bequest made to plaintiff. Two of the Fiske heirs, Maud Kennicott Reid and Mabel B. Gleason, answered asking distribution of the bequests in question to the heirs and denying that the case was one for application of the *cy pres* doctrine. The Attorney General, who is a proper party to support a legacy to a public charity (*Attorney General v. Newberry Library,* 150 Ill. 229, 236; *Smith v. Thompson,* 266 Ill. App. 165, 168), answered, as did the Infant Welfare Society of Chicago, asserting that its work was more nearly similar to that of plaintiff than any other charity in Chicago and that the fund should be awarded to it. Upon trial the chancellor held that the doctrine of *cy pres* was not applicable and decreed that the fund be distributed to the Fiske heirs. This appeal is from that decree.

The Attorney General says that the intention of the testator was to help "poor children," and there is an assumption that the testator in his bequest to plaintiff intended to help children. There is no reference in plaintiff's charter to "children" as such. The charter states that the object of the Fresh Air Fund is for the medical treatment of the sick and poor and the promotion of health of those financially unable to provide for this. Plaintiff was incorporated in 1894, while the Infant Welfare Society was not incorporated until 1911, three years after the death of the testator. Its objects are stated to be the promotion of the general health and welfare "of infants and children."

It is a fundamental principle that the power to make

a will is in the testator and not in the court. If the testator fails to dispose of any part of his property the statute of descent (ch. 39, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 110.193–110.204]) operates. It is also elementary that in construing a will the controlling element is the intention of the testator. *Brill v. Green,* 316 Ill. 583, and many other cases.

The court will adopt any reasonable construction of a will rather than hold that the testator intended to die intestate, but if he has overlooked something which he, perhaps, would have provided for if it had occurred to him, the court cannot guess as to what his disposition might have been. *Pontius v. Conrad,* 317 Ill. 241. In *First Trust & Savings Bank of De Kalb v. Olson,* 353 Ill. 206, 212, the testatrix in her will said it was not her desire to die intestate, but the court held that as she left no directions with reference to two-thirds of the residuary estate it necessarily passed as intestate property. This applies also to legacies for which the testator has provided but which have lapsed. Such lapsed legacy becomes part of the residuary estate, and if no other provision is made it becomes intestate property. *Davis v. McKown,* 131 Me. 203, 209. *In re Durand's Will,* 250 N. Y. 45, 55, certain trusts established by the will for the benefit of the grandchildren were held void, the opinion saying the court must leave this property as if there were no will. Other supporting cases might be cited.

In the instant case the testator bequeathed part of his residuary estate to the Chicago Daily News Fresh Air Fund, the plaintiff. By its complaint the court was informed that it declined to take the bequests as it had decided to discontinue its operations. The will of the testator made no provision for such a contingency. The court has no way of knowing what the testator might have done if he had had in mind that the Fund might suspend operations. The Attorney General argues the testator would have directed that the property go to

another charity of similar purpose, but this is mere speculation. The courts cannot guess at what provision the testator probably might have made. It is well established that the intention of a testator must be drawn from the language of the will itself. *Dahmer v. Wensler*, 350 Ill. 23, 27. And in *Hampton v. Dill*, 354 Ill. 415, 420, it was said, "the court cannot guess which provision he would have made and read it into his will on the presumption that he would naturally have made such a provision if he had thought of it. *LaRocque v. Martin*, 344 Ill. 522."

Upon the trial the Attorney General offered the testimony of Mr. George H. Schneider, the trustee of the testator's residuary estate, concerning conversations which he had with the testator about the time of making the will. The court ruled that this testimony was outside the will and not proper to affect the intent. As a general rule parol testimony is competent to prove the circumstances of the testator at the time of making the will and his relations to his family, but never to prove declarations made prior to or after the execution of the instrument. *Ransdell v. Boston*, 172 Ill. 439, 446; *Hollenbeck v. Smith*, 231 Ill. 484, 488; *Dahmer v. Wensler*, 350 Ill. 23, 29, 30.

However, Mr. Schneider's testimony does not tend to vary the intention shown in the will. Mr. Schneider testified that Mr. Fiske, prior to making his will, asked him to mention a number of charities, and Mr. Schneider did mention some seven or eight, including the Chicago Daily News Fresh Air Fund and the Home for Destitute Crippled Children, which the testator made his residuary legatees. Mr. Schneider did not select these charities but merely submitted a list from which the testator himself made the selection. Nothing in this conversation indicates that the testator had any intention to benefit other charities than those named in the will.

In *Quimby v. Quimby*, 175 Ill. App. 367, we held that

a general charitable intent cannot be deduced from the sole fact that the organization named in the will is engaged in a particular charitable work. In that case the testatrix bequeathed the remainder of her estate to the "Chicago Waif's Mission and Training School," which was organized to provide suitable homes for dependent and needy boys and girls; the will provided this remainder should be paid within five years after the death of testatrix, provided a certain contingency had not occurred; the five years passed and the contingency had not occurred, but by this time the Chicago Waif's Mission and Training School had ceased to carry on its work and had turned over all its property to a training school for boys which afterwards changed its name to the Illinois Manual Training School Farm; a bill was filed asking instructions of the court with reference to the distribution of the estate; certain heirs filed an answer claiming the estate, as did the Attorney General and the Illinois Manual Training School Farm, the latter claiming the estate under the equitable doctrine of *cy pres*, by reason of the similarity of the work carried on by it to that carried on by the Chicago Waif's Mission and Training School. The *cy pres* doctrine is thus described: " . . . it seems to be this, that if it can be seen that a charity was intended, by a testator, but the object specified cannot be accomplished, the funds may be applied to other charitable purposes, or that the chancellor may seize them as a sort of waif, and apply them as his, or the king's good conscience, shall direct. . . . In this way the chancellor substitutes himself in the donor's place, and really makes the will himself." *White v. Fisk*, 22 Conn. 31, 54. The chancellor in the *Quimby* case found there was nothing in the will showing a general charitable intention and that the estate ought not to be applied *cy pres* to other charitable purposes. We sustained this, saying that a general charitable intent to benefit needy boys and girls, generally, cannot be deduced from the sole fact that the Chicago

Waif's Mission and Training. School was engaged in charitable work for needy boys and girls. We there said (p. 373) that the doctrine of *cy pres* should be applied "if the bequest is to a cause or for a purpose or to aid and further a plan or scheme of public benefit," for then there is evidence of a general charitable intent. But where the gift is not to any cause, plan or scheme of charity, but to a specific or particular organization, no general charitable intent by the testatrix is indicated and the doctrine of *cy pres* does not apply.

The Attorney General in his brief says the *Quimby* case was rightly decided upon the facts there involved but that those facts distinguished it from the instant case. He says that in the *Quimby* case only one charity was mentioned, whereas six charities are included in the will in the present case. There seems to be some difference of opinion as to the number of charities in the instant will, counsel for the heirs claiming only two charities are mentioned in connection with the residuary estate, which is the only thing involved here. But provision for a number of specific charities does not show a general charitable intent. Each specific bequest is to be considered precisely as if it stood alone. *George Washington University v. Riggs Nat. Bank of Washington, D. C.,* 88 F. (2d) 771, 772. In *Volunteers of America v. Peirce,* 267 Ill. 406, the residuary estate was left to six named charitable institutions. The court held that where the share each beneficiary is to receive is in no way dependent upon the number who shall survive, it is not a gift to a class but to the beneficiaries distributively. There a bequest to the Buchanan Anti-Saloon League, which had ceased to exist, passed as intestate property to the heirs.

It is said that in the *Quimby* case the bequest to the charity was conditional and that in the instant case the charities will "positively receive their gifts." *People v. Flanagin,* 331 Ill. 203, 207, 208, holds that a legatee is under no obligation to accept a testamentary gift but

it may be renounced. The Chicago Daily News Fresh Air Fund has renounced the bequests in the instant will. The legatee having renounced the gift, it does not take effect and is as if it had never been made.

Other points are suggested by the Attorney General which he says distinguish the *Quimby* case from that now under consideration, but these distinctions or differences are superficial and do not change the fundamental rule stated in the *Quimby* case that, where the donor has not expressed a charitable intent generally but only provided for one specific, particular object which cannot be carried out, the court will not apply the doctrine of *cy pres*. This view has been supported in many cases. See Restatement of the Law of Trusts, § 399. In all cases where the doctrine has been applied the testator in his will expressed general purposes. See *Teele v. Bishop of Derry*, 168 Mass. 341, and *Heuser v. Harris*, 42 Ill. 425, in the latter of which the testator directed that his land should be sold and the proceeds applied for schooling the children in the school district in which the land lay and one-half for the support of the poor in the country in which he lived; the machinery for administering this trust was impractical, but the court said that even if the machinery "cannot be put in working order," so long as the purpose of the trust was clear and valid a court of equity will execute it *cy pres*. A similar situation arose in *Crerar v. Williams*, 145 Ill. 625, where the will clearly bequeathed the residue of the estate for a free public library, to be incorporated; the bequest was attacked on the ground this beneficiary could not be legally incorporated; the court held that even if this were true the bequest will be sustained and carried into effect. There the general purpose to establish a free public library was expressed in the will.

The Attorney General cites *Rhode Island Hospital Trust Co. v. Williams*, 50 R. I. 385. There the testatrix left the residue of her estate to a number of charities,

one of which was described as the Bristol Cottage Hospital; a corporation by that name had been legally organized but remained dormant and the charter was forfeited for nonuse in 1925; the testatrix died in 1927; in 1928 a new corporation was organized with the same name as the old corporation and for the same purpose. One of the factors influencing the court to sustain the bequest to the Bristol Cottage Hospital was that the testatrix had for many years, with others, been interested in promoting the plan for such a hospital. In the instant case the Infant Welfare Society of Chicago, which claims under the *cy pres* doctrine, was not in existence when the testator made his will and was not organized until three years after he died. Its object, as stated in the charter, was the "welfare of infants and children," which is a much narrower purpose than the objects of the Chicago Daily News Fresh Air Fund, which as stated in its charter, was to provide charitable aid to the poor. Moreover, the decision in the *Rhode Island* case is contrary to the decisions in Illinois. *Volunteers of America v. Peirce*, 267 Ill. 406; *Miller v. Riddle*, 227 Ill. 53. Other cases cited by the Attorney General are contrary to the decision in the *Quimby* case and in the Illinois cases just cited. It has been repeatedly held that the disposition of intestate estates is regulated, not by will but by statute. *Jahnke v. Selle,* 368 Ill. 268, 271.

We conclude that Mr. Fiske bequeathed a part of the residue in question to a specific charity by name, thus evidencing an intent to benefit this specific charity and not a general charitable intent; that as the Chicago Daily News Fresh Air Fund, the specific charity named, has renounced the bequest to it, the property passes as if the bequest had not been made.

The finding of the trial court was proper and it is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.