(No. 38466.—

HELEN KNIGHT *et al.,* Appellees, *vs.* WILLIAM U. BARD-WELL, EXR., *et al.*—(CHRISTIAN SCIENCE PLEASANT VIEW HOME, Appellant.)

*Opinion filed January 21, 1965.—Rehearing denied March 17, 1965.*

SCHUYLER, STOUGH & MORRIS, of Chicago, (ROBERT E. COOK and DANIEL M. SCHUYLER, of counsel,) for appellant.

RAYMOND, MAYER, JENNER & BLOCK, of Chicago, (ALBERT E. JENNER, JR., ADDIS E. HULL, and ROBERT E. PFAFF, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

By her will and codicils Maud Bayless bequeathed 150 shares of stock of the Texas Corporation to each of the plaintiffs, Helen Knight and Raymond Willis, Jr., and named the Christian Science Pleasant View Home of Concord, New Hampshire, as residuary legatee. Plaintiffs brought this will construction action against the Home and William U. Bardwell, the executor, to determine how many shares each plaintiff is to receive. The controversy is the result of two 2-for-1 stock splits. The first split occurred after the execution of the will but before the execution of the first codicil and the second occurred after the execution of all the codicils but before the death of the testatrix. The trial court awarded 600 shares to each of the plaintiffs but denied both party's petitions for the allowance of attorney's fees. The Appellate Court affirmed, (45 Ill. App. 2d 332), and we granted leave to appeal.

The testatrix was the third wife of Benjamin Bayless. The plaintiffs are grandchildren of her husband, and step-grandchildren of the testatrix. During his lifetime Bayless had made a gift to the testatrix of 100 shares of Texas Corporation stock. At the time of his death in 1920 these shares had increased in number to 400 as the result of a stock split. On July 14, 1950, at which time her total Texaco holdings amounted to 1040 shares, (by virtue of stock dividends and additional purchases), the testatrix executed her will which included the following bequest:

"SECOND: Whereas, I have in my safety deposit box in the First National Bank and Trust Company of Evanston, Illinois, among other securities, three hundred (300) shares of the Texas Corporation, which securities came to me from my husband, Benjamin Bayless, and which, other than the Greenwood Inn situated in Evanston, Illinois, comprised a considerable portion of the liquid estate at the time of his death and which, at the present time (July, 1950), are worth approximately $20,000; and

"Whereas, the will of my husband, Benjamin Bayless was set aside as a result of action taken by his son, George Wood Bayless, and his wife, and a new contract was made whereby I have heretofore released to said George Wood Bayless, at his request, all my right, title and interest in and to said Greenwood Inn, except such as according to the contract and also by the original will of my husband, I have by way of annuity; and

"Whereas, my deceased husband's granddaughter, WILHELMINA C. BAYLESS, his only other heir, since deceased without issue, was amply provided for by the terms of his will and by the terms of a subsequent contract relating thereto;

"Therefore, without any obligation on my part but because of my desire to do as I would wish to be done by, I hereby give, devise and bequeath unto WILHELMINA B. WILLIS, daughter of my said deceased husband, the three hundred (300) shares of said Texas Corporation. In case the said WILHELMINA B. WILLIS should die before my death, then I give, devise and bequeath the said shares of stock to such of her two children as may survive me, share and share alike. Certificates for said three hundred (300) shares will be found in an envelope, properly marked, in said safe deposit box."

On May 16, 1951 there was a 2-for-1 split which increased testatrix's holdings to over 2000 shares. On April

12, 1952, she wrote a letter containing the following language to her lawyer: "The 300 shares of Texas must be changed to $12,000 as a bequest to Wilhelmina Willis or her heirs—now that she is gone,—and perhaps the balance of the wordings must also be changed." Approximately two weeks later on May 1, 1952, she executed the following codicil:

"FIRST: In the second provision of my Will I bequeathed three hundred shares of the capital stock of the Texas Corporation unto WILHELMINA B. WILLIS, the daughter of my deceased husband, BENJAMIN BAYLESS, or, in case of her prior decease, to such of her children as might survive me and related my reasons for such legacy. The said WILHELMINA B. WILLIS is deceased and left her surviving HELEN KNIGHT, her daughter and RAYMOND WILLIS, JR., her son. My attitude toward the two grandchildren of my deceased husband has not changed since I signed my Will July 14, 1950, and out of love for my husband I give one hundred and fifty shares of the capital stock of the Texas Corporation as constituted when my will and codicil become effective unto said HELEN KNIGHT and an equal number of said shares of the Texas Corporation stock unto said RAYMOND WILLIS, JR."

Subsequently the testatrix executed two other codicils, neither of which bears upon the issues in this case. In May of 1956 the stock again was split 2 for 1, so that on the date of her death in December, 1956, she owned approximately 4000 shares.

Plaintiffs contend, and the trial and Appellate courts held, that the legacy of 150 shares carried with it the additional shares resulting from the two splits, so that they are each entitled to receive 600 shares. Since the two splits present distinct problems we will analyze them separately. The first split is controlled by the principle that a will and all codicils are to be "read together as one instrument of the date of the execution of the last codicil." (*Jackman* v. *Kaspar*, 393 Ill. 496, 511.) Because it is assumed that when a testator executes a codicil he re-examines his entire will and makes whatever changes are necessary, the will and codicil combined are regarded as expressing

his intent as of the date of execution of the codicil, even though the codicil does not refer to the specific provision of the will that is in question. In the present case, the codicil dealt specifically with the stock in question. The testatrix had received the additional stock resulting from the 1951 split and, as the Appellate Court held, her awareness seems to have been proved.

The Appellate Court disposed of the fact that this testatrix knew of the stock split when she provided in her codicil that each of the plaintiffs should receive 150 shares upon the ground that there is "uncertainty in predicting what action should be taken because of such awareness, and that very uncertainty has previously led this court to discount the value of awareness as determinative of intent." In the case relied upon by the Appellate Court (*Heckler* v. *Young,* 264 Ill. App. 34,) the testatrix, although she knew of the stock split, took no action. But because awareness followed by inaction does not dispel uncertainty, it does not follow that action based upon awareness is to be disregarded. Here the testatrix acted, and the action that she took negates uncertainty. We see no basis in this record upon which a court would be justified in rewriting the bequest of 150 shares to each of the plaintiffs so that it would read, 300 shares to each of the plaintiffs.

The second stock split presents a different problem, for the testatrix did not again alter her testamentary disposition. The issue therefore depends upon what the testatrix intended by her codicil of May 1, 1952. The most noteworthy aspect of the codicil is that the testatrix did not give each of the plaintiffs "150 shares of the capital stock of the Texas Corporation." She gave each of them "150 shares of the capital stock of the Texas Corporation as constituted when my will and codicil become effective." It will not do, we think, to say as the trial court said, that the "as constituted" phrase modifies "Texas Corporation," for that interpretation deprives the phrase of any sig-

nificance. Its only purpose would then be to prevent ademption if there was a reorganization or recapitalization of the corporation, but under the established doctrine of "substantial identity" there is no ademption in such cases. See cases collected, 7 A.L.R. 2d 276, 278; Note, Ademption by Extinction: The Form and Substance Test, 39 Va. L. Rev. 1085 (1953).

Nor will it do, we think, to say as the Appellate Court said, that the "as constituted" phrase is to be disregarded as ambiguous because "this language could be considered a bequest of 150 shares as they existed at the date of execution of the codicil, together with whatever stock dividends might accrue to the date of her death, so that the 150 shares as constituted at the date of death might well mean more than 150 shares as of that date." (45 Ill. App. 2d at 338.) This interpretation disregards the fact that the clause "when my will and codicil become effective," looks to the future and shows that the testatrix was not thinking of the present moment of execution, but of an event occurring in the future. It also ascribes to the clause a meaning contrary to its legal significance, for neither a will nor a codicil becomes effective until the testator's death.

The meaning of the clause is "150 shares of the capital stock as constituted when my will and codicil become effective." That the "as constituted" phrase modifies "capital stock" may be somewhat obscured by the interposition of the words "of the Texas Corporation" between the words "stock" and "as constituted." But it was necessary to identify the stock, and the meaning of the clause is not altered because the testatrix placed the words identifying the corporation where she did rather than elsewhere. We hold, therefore, that the codicil bequeaths to each plaintiff 150 shares of the capital stock of the Texas Corporation as that stock was constituted when the will and codicil became effective at the death of the testatrix.

This interpretation is supported by the extrinsic evi-

dence. It was stipulated that: "About the year 1920, when plaintiffs were in their teens, Benjamin Bayless died and a dispute then ensued between plaintiffs' mother, Wilhelmina Willis, and Maud Bayless regarding the Estate of Benjamin Bayless and the management, operation and ownership of the Greenwood Inn, a hotel in Evanston, in which Mr. Bayless had an interest at the time of his death. When plaintiffs were graduated from college Maud Bayless sent each a token graduation gift. Until just a few years prior to her death, Mrs. Bayless sent each of the plaintiffs a Christmas Card. At no time, however, subsequent to the Greenwood Inn dispute in the early 20's (prior to May of 1921), did Helen Knight or Raymond Willis, Jr., ever see, talk to or correspond with Maud Bayless."

The Greenwood Hotel dispute was terminated by the contract to which the testatrix referred in her will. The plaintiffs were not related to the testatrix by blood, and they had not communicated with her in more than 30 years. Her bequests, first to the mother of the plaintiffs and then to the plaintiffs, were not prompted by affection. They were made, in her words, "without any obligation on my part but because of my desire to do as I would wish to be done by." In these circumstances we do not see how the plaintiffs are aided by the fact that in her codicil the testatrix states "My attitude toward the two grandchildren of my deceased husband has not changed since I signed my will July 14, 1950, and out of love for my husband I give * * *." It appears reasonably clear that her attitude toward the plaintiffs was never a significant factor in her testamentary dispositions. In her first will, dated April 20, 1935, testatrix bequeathed 400 shares of Texaco stock to the mother of plaintiffs. In 1950, she reduced this legacy to 300 shares and, as we have seen, in 1952 she again reduced the gift by her codicil which prevented the plaintiffs from obtaining the additional stock that resulted from the 1951 split.

The Appellate Court pointed out that in determining

the intent of the testatrix it is necessary to recognize that to an investor a "certificate for shares of stock is merely evidence of the shareholder's proportionate ownership in a corporation." This statement, however, sheds little light upon the intention of a particular testator. Stock is also thought of solely in terms of market value rather than as a percentage of control or equity. Indeed, unless a close corporation or a substantial holding in a public corporation is involved, stock is ordinarily thought of primarily in the market value sense. In support of their theory plaintiffs also argue that under a different rule the directors of a corporation will be permitted to reduce the value of the legacy. However there is nothing novel about this. Cash dividends received by the testator prior to his death surely reduce the value of the stock but they do not inure to the legatees' benefit. (13 Am. Jur., Corporations, § 700 p. 715.) Under the majority rule even stock dividends, which reduce the value of the underlying stock and its percentage of equity, do not benefit the legatee. (172 A.L.R. 364.) Frequently the only difference between a stock dividend and split is the manner in which the transaction is accounted for on the corporate books. Surely this is of no concern to the ordinary testator.

The final question presented by this appeal is who should bear the burden of the attorneys' fees and costs incurred by the parties in the trial court proceedings. The trial court found that the plaintiffs, the Home and the executor, had incurred reasonable and necessary fees and costs of $9715.84, $7450, and $3000 respectively. No issue is raised as to this determination or as to the trial court's conclusion that the allowance of the executor's attorneys' fees was a matter for the probate court to decide. In question, however, is the trial court's order denying the petitions of the Home and the plaintiffs which asked that their respective fees and costs be charged against the estate. The court's judgment was based upon a finding that it was "fair that each of the

parties bear his, her, or its own fees and costs." On this appeal the plaintiffs contend that their fees should have been charged against the residuary estate, and the Home argues that its fees should have been charged against the shares of stock bequeathed to plaintiffs since those shares were the fund in dispute.

When a testator leaves a will which contains ambiguous provisions necessitating resort to a court of equity to construe the will and resolve the ambiguity, it is often reasonable to charge the costs of that litigation against the testator's residuary estate. (*Woman's Union Missionary Society* v. *Mead,* 131 Ill. 338.) In other cases, however, it may be more equitable to charge such fees against a particular fund or piece of property. (*Golstein* v. *Handley,* 390 Ill. 118; *Appleton* v. *Rea,* 389 Ill. 222.) And in others it may be appropriate to not allow any payment of fees from the estate. (*Hockersmith* v. *Cox,* 407 Ill. 321, 337.) Whether fees should be taxed at all, the amount of the fees, and the fund to be charged are matters within the discretion of the chancellor to be determined with reference to the construction of the will and other attendant factors.

In this case the trial court found that the residuary estate, after payment of all specific bequests, including those to plaintiffs, and after payment of all debts, death taxes and expenses of administration, amounted to over $290,000. Under our construction of the will the size of the residuary estate will be increased by the addition of 900 shares of Texaco stock while the plaintiffs receive the 300 shares over which there is no dispute. In her will and second codicil dated October 22, 1950, the testator directed that all state and federal inheritance and succession taxes be paid out of the residue and that no deduction for such taxes should be made from any gifts or legacies. Under these circumstances we think it equitable and consistent with the testator's intent that the attorney's fees and costs of the

plaintiffs and the defendant Home be charged against the residuary estate.

The judgment of the Appellate Court is reversed and the cause is remanded to the circuit court of Cook County for the entry of a decree consistent with this opinion.

*Reversed and remanded.*