THE NORTHERN TRUST COMPANY, Trustee, Plaintiff-Appellant, *v.* WINONA LAKE SCHOOL OF THEOLOGY, Defendant-Appellee and Cross-Appellant.—(THE MOODY CHURCH, Defendant-Appellant; LORRAINE NORTH *et al.*, Defendants.)

First District (1st Division)   No. 76-1204

Opinion filed June 12, 1978.

968

Norman L. Olson, Jr., and Thomas G. Hoffman, both of Ashcraft & Ashcraft, of Chicago, for appellant Northern Trust Company.

Charles Martin and J. William Hayton, both of Bell, Boyd, Lloyd, Haddad & Burns, of Chicago, for appellant Moody Church.

Halbert O. Crews and James S. Jarvis, of Greenberg, Keele, Lunn & Aronberg, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

As trustee of a trust agreement, Northern Trust Company (Northern) brought this action for construction of certain provisions of the trust agreement relating to an attempted gift of $100,000 to Winona Lake School of Theology, Inc. (Winona). Named as defendants in the action were Winona, The Moody Church (Moody) which was the residuary beneficiary under the trust agreement, and certain other individual legatees who failed to appear and defend the cause. Pursuant to Winona's motion, the trial court entered summary judgment in Winona's favor

finding that under the provisions of the trust agreement Winona was entitled to the $100,000. The trial court, however, denied Winona's motion for accrued income on the $100,000 gift.

At trial, Northern petitioned the court for trustee's fees and the attorneys for Northern and Moody petitioned the court for attorneys' fees. Although finding that the trust agreement was ambiguous and that Northern and the attorneys for Northern and Moody were thus entitled to fees, the trial court, noting the smallness of the estate and the amount of fees involved, awarded only half the requested fees. The trial court also ordered that the fees awarded should be paid out of the residue of the estate and not the $100,000 specific legacy to Winona. Winona contended at trial that the trust agreement was unambiguous and that therefore no fees should be awarded. In the alternative, Winona contended that if the court were to grant fees, it should award them attorneys' fees as well. The trial court awarded Winona half the fees requested and ordered those fees payable out of the residue of the estate.

Both Northern and Moody appeal from the trial court's order granting summary judgment in favor of Winona, from the order awarding them only half their requested fees, and the order of the trial court ordering that those fees be paid from the general residue of the estate. They contend that all fees are payable out of the $100,000 specific legacy under dispute.

Winona cross-appeals from that part of the trial court's finding that the provisions of the trust agreement relating to the gift to Winona are ambiguous and from the order awarding fees to the attorneys for Northern and Moody. In the event this court should find the award of attorneys' fees proper, Winona also appeals from that part of the trial court's order cutting its requested fees in half. Winona also appeals from the ruling of the trial court denying its request for accrued income on its $100,000 gift.

We affirm in part, reverse in part, and remand with directions.

The instant trust agreement was executed on June 21, 1955, with Lillian V. Clarke as settlor and Northern as trustee. The provision in dispute is section 4 thereof which makes the following disposition of the residue of the trust upon the settlor's death:

> "*SECTION 4—DISTRIBUTION OF RESIDUE:*
> Upon the death of the last to die of the Settlor and the Settlor's said husband, all the principal and any accrued or undistributed net income remaining after the payments directed to be made in the preceding sections hereon, which remaining principal and accrued or undistributed net income is hereinafter referred to as the residue, shall be conveyed, transferred and assigned as follows:
> (a) If all of said residue shall, in the opinion of the Trustee,

whose opinion shall be final, be of a value not in excess of One Hundred Thousand Dollars ($100,000.00) after making the payments directed to be made in the preceding sections hereof, then the entire residue shall be conveyed, transferred and assigned to WINONA LAKE SCHOOL OF THEOLOGY, INCORPORATED, Winona Lake, Indiana, or to any corporate successor of said corporation which shall then be the owner of the real estate and improvements at Winona Lake, Indiana, now owned by said corporation, and which shall then be operating and conducting a school of theology at that location.

(b) If said residue shall, in the opinion of the Trustee, be of a value in excess of One Hundred Thousand Dollars ($100,000.00) computed as aforesaid, then the Trustee shall convey, transfer and assign to said WINONA LAKE SCHOOL OF THEOLOGY, INCORPORATED, or to its corporate successor, computed as aforesaid, cash, securities and property, or cash, securities or property having a then value as determined by the Trustee based upon the market value of securities so transferred of One Hundred Thousand Dollars ($100,000.00), and the balance shall be distributed in the manner set forth in the following Sub-paragraphs (c) and (d)."

Subparagraph (c) of section 4 provided for the payment of legacies totalling $90,000 to 16 different legatees. Subparagraph (d) of section 4 provided that "[i]f any of said residue shall remain after said payments, the same shall be paid to THE MOODY CHURCH, 1609 North LaSalle Street, Chicago, Illinois."

On August 31, 1962, pursuant to a power of amendment contained in the original agreement, the settlor added the following amendment:

"The Settlor shall have the right at any time and from time to time during her lifetime by instrument in writing delivered to the Trustee to alter or amend this trust indenture either in whole or in part, provided, however, that if altered or amended the duties, powers and responsibilities of the Trustee shall not be substantially changed without its consent; and provided, further, that that part of the provisions of SECTION 4 which apply to WINONA LAKE SCHOOL OF THEOLOGY, INCORPORATED, or its corporate successor ascertained as in SECTION 4 may not hereafter be altered or amended, the Settlor hereby expressly relinquishing and disclaiming any further right of amendment insofar as the same may relate to provisions for said WINONA LAKE SCHOOL OF THEOLOGY, INCORPORATED, or its corporate successor."

All parties agree that the residue of the Clarke Trust Estate exceeds $100,000.

The trust agreement also contained a provision requiring the trustee to pay any estate and inheritance taxes necessitated by the settlor's death and any funeral expenses and expenses of last illness.

When Mrs. Clarke added the amendment to the trust agreement, Winona was an Indiana not-for-profit corporation, organized on November 19, 1924, and engaged actively in operating a graduate school during the summer seasons of the year for the teaching of theology at its campus located in Winona Lake, Indiana.

Lillian V. Clarke died on December 22, 1973, her husband, Charles, having predeceased her. On the date of Mrs. Clarke's death, Winona was an existing Indiana not-for-profit corporation fully empowered to receive gifts for the carrying out of its corporate purpose. On that date Winona owned campus real estate at Winona Lake, Indiana, consisting of approximately 9.4 acres of land improved with five cabins, an administration building and library, three faculty cottages, a living room and dormitory, a chapel, outdoor amphitheater, caretaker's cottage, garage and shop, two tennis courts, private beach, softball diamond, bowling green and shuffle board. However, in answer to interrogatories, Winona admitted that if did not operate a school of theology subsequent to the year 1970; that it had unpaid creditors with claims of $83,809; and that it had failed to file its annual reports with the State of Indiana or pay its franchise tax in a timely manner for the years 1970 through 1973. For the years 1970 through 1973, Winona filed its annual reports and franchise fees on February 28, 1974.

Both Northern and Moody first argue that according to the provisions of the trust agreement, Winona's gift was contingent on the fact that Winona be operating a school of theology at the time of the settlor's death. They contend that since it is agreed that Winona was not operating such a school at the time of the settlor's death the gift to Winona must fail. In further support of this argument, Northern argues that the trial court ignored numerous basic rules of construction in upholding the $100,000 gift to Winona.

■ ■■ It is only where a will is silent on a particular question, in the sense that it contains no express answer to the question, that a construction of the will is necessary. (*Harris Trust & Savings Bank v. MacLeod* (1972), 4 Ill. App. 3d 542, 281 N.E.2d 457.) Where the words used in a trust agreement are plain and their meaning clear, the plain intention will prevail over the presumed intention. (*In re Estate of Sacks* (1967), 89 Ill. App. 2d 1, 231 N.E.2d 688.) In the instant case we find no ambiguity in the trust agreement. Section 4(b) of the trust agreement provides that if the residue is over $100,000 the trustee shall convey to Winona or its corporate successor, "computed as aforesaid," $100,000. All parties correctly contend that the language "computed as aforesaid" refers to section 4(a)

which provides that if the residue is less than $100,000 the trustee shall convey the entire residue to Winona "or to any corporate successor of said corporation which shall then be the owner of the real estate and improvements at Winona Lake, Indiana, now owned by said corporation, and which shall then be operating and conducting a school of theology at that location." We find nothing ambiguous in the above provisions. It is clear from the record that Winona never had a corporate successor. It is clear from the language of the agreement that the requirement of operating a school of theology applies only to Winona's corporate successor and not to Winona. This is clear from the language of the agreement itself and thus a resort to rules of construction is unnecessary.

■■ Northern and Moody raise the additional argument that the trial court erred in not finding that the attempted gift to Winona had lapsed. They note that Winona had not been operating a school of theology since 1970, three years prior to the death of the settlor; that Winona has unpaid creditors whose claims total $83,809; and that Winona had not filed annual reports or paid franchise taxes for the years 1970 through 1973 until February 28, 1974, after the death of the settlor. Both Northern and Moody conclude that Winona was a mere shell corporation which was revitalized to take the gift. They conclude that this "shell existence" is equivalent to nonexistence for the purposes of receiving the gift. In determining the above question, courts should strive where possible to give effect to the testator's intention. (See *McDonough County Orphanage v. Burnhart* (1955), 5 Ill. 2d 230, 125 N.E.2d 625, and cases cited therein. See also 80 Am. Jur. 2d *Wills* §1665 (1975).) In urging that the gift to Winona has lapsed Northern relies heavily on *Mott v. Danville Seminary* (1889), 129 Ill. 403, 21 N.E. 927, and *Miller v. Riddle* (1907), 227 Ill. 53, 81 N.E. 48. We believe those cases are clearly distinguishable from the instant situation. *Mott* and *Miller* espouse the common law rule that the presumed intent of the testator is that property donated to a charitable corporation and not alienated by that corporation will revert to the donor upon the charity's dissolution. In *Mott* the corporation was officially dissolved and in *Miller* the court ruled that the corporation was dissolved by abandonment and nonuser. In both cases the court ruled that the property involved reverted to the donor. In the instant case we are not dealing with a dissolved corporation. Winona owned property, could receive gifts in order to fulfill its corporate purpose, and had paid taxes on its corporate franchise. Although in perhaps a semimoribund state, Winona was a living viable corporation.

In further support of the argument that Winona's gift lapsed, Moody cites *Garner v. Home Bank & Trust Co.* (1937), 171 Tenn. 652, 107 S.W.2d 223; *In re Harrington's Estate* (1949), 151 Neb. 81, 36 N.W.2d 577;

*Camden Trust Co. v. Christ's Home of Warminister* (1953), 28 N.J.Super. 466, 101 A.2d 84. These cases are considered and distinguished in *In re Estate of Daley* (1967), 6 Ariz. App. 443, 433 P.2d 296 where the court noted that the above three cases involved situations where the beneficiary was unable to make use of the testamentary gift. In the instant situation Winona can receive and make use of the gift.

Winona is clearly and unequivocally described in the testamentary agreement as the legatee of the $100,000 gift. This gift to Winona is general in character and not restricted to any specific purpose other than that which the law implies, *viz.*, that the gift be used for corporate purposes. There is no showing in the record that the beneficiary is unable to make use of the gift. We conclude that the gift did not lapse. This conclusion, we believe, best fulfills the intent of the testator and is in accord with the prevailing rule stated as follows in 79 Am. Jur. 2d *Wills* §178 (1975):

> "The prevailing rule is that the fact that a religious, charitable, or educational organization named as a beneficiary in a will discontinues its active functions after the execution of the will does not impair its right to take the gift so long as its identity, whether corporate or associative, continues without dissolution until the death of the testator."

■■■ Both Northern and Moody further argue that the trial court erred in charging the expenses of the litigation to the residue of the trust and not to the $100,000 fund in question. They cite several cases espousing the general rule that where a suit involves a certain fund or parcel of property the costs of litigation should be borne by the fund or property in question. (See *Appleton v. Rea* (1945), 389 Ill. 222, 58 N.E.2d 854; *Strickland v. Strickland* (1916), 271 Ill. 614, 111 N.E. 592; *Golstein v. Handley* (1945), 390 Ill. 118, 60 N.E.2d 851. See also 36 Ill. L. & Prac. *Wills* §455 (1958).) However, we believe a better and more complete statement of the law is provided in *Knight v. Bardwell* (1965), 32 Ill. 2d 172, 180, 205 N.E.2d 249, 253:

> "When a testator leaves a will which contains ambiguous provisions necessitating resort to a court of equity to construe the will and resolve the ambiguity, it is often reasonable to charge the costs of that litigation against the testator's residuary estate. (*Woman's Union Missionary Society v. Mead,* 131 Ill. 338.) In other cases, however, it may be more equitable to charge such fees against a particular fund or piece of property. (*Golstein v. Handley,* 390 Ill. 118; *Appleton v. Rea,* 389 Ill. 222.) And in others it may be appropriate to not allow any payment of fees from the estate. (*Hockersmith v. Cox,* 407 Ill. 321, 337.) Whether fees should be taxed at all, the amount of the fees, and the fund to be charged

are matters within the discretion of the chancellor to be determined with reference to the construction of the will and other attendant factors."

It is apparent from the above rule that a determination of the fund to be charged is within the trial court's discretion and involves considerations of reasonableness and equity. In the instant case we see no abuse of discretion in the trial court's order charging fees and costs to the residue. We furthermore believe that order to be equitable and reasonable.

Under the provisions of section 4 of the trust agreement Winona was to take before any of the other beneficiaries. Winona was to receive the first $100,000 of the estate or the entire estate if less than $100,000. That Winona is the primary beneficiary under the trust agreement is further supported by section 2 of the trust agreement which provides that all estate and inheritance taxes were to be paid "out of the principal of the trust estate as a whole" and were not to be charged against the interests of the beneficiaries.

We conclude that the trial court did not abuse its discretion in allowing the fees to the general residue. We see no violation of considerations of justice or fairness in such an order. The gifts to the residuary beneficiaries were secondary and dependent upon the gift to Winona.

We next consider Winona's cross-appeal in which Winona contends that the trial court erred in not awarding its income attributable to the $100,000 gift. In support of the above Moody and Northern first rely on section 5(4) of the Principal and Income Act (Ill. Rev. Stat. 1975, ch. 30, par. 163(4)) which provides:

"In respect to the Will of a person dying after this amendatory Act takes effect and unless otherwise provided by the Will:

\* \* \*

The legatee of a pecuniary legacy not in trust shall not be paid interest on the legacy nor shall the legatee be entitled to receive any part of the income received by the personal representative during the period of administration as income on the legacy."

Northern contends that section 5(4) of the Principal and Income Act expresses a policy in Illinois concerning the subject of interest on pecuniary gifts not in trust.

Section 5(4) of the Principal and Income Act by its clear wording applies specifically to wills. It refers to income accrued during the period of administration. The instant instrument, an inter vivos trust agreement, was not executed with the requisite formalities of a will and, obviously, is not a will. By statute, the distribution of an estate of a deceased who dies testate is delayed during the period of that estate's administration. The instant situation involved an inter vivos trust agreement and there is no statutory period of administration applicable to such an instrument. The instant delay in payment of the $100,000 gift was caused by the suit for

construction and declaration brought by Northern and not by the mandatory period of administration contemplated in section 5(4) of the Principal and Income Act.

■■■ In determining whether Winona is entitled to accrued income on the gift, the paramount consideration is the testator's intent (*State Bank of Chicago v. Gross* (1931), 344 Ill. 512, 176 N.E. 739) and where possible courts will give effect to this intent (*Feder v. Luster* (1973), 54 Ill. 2d 6, 294 N.E.2d 293). The instant settlor's intent is clear from a reading of sections 2 and 4 of the trust agreement. These sections provide that Winona was to receive its $100,000 gift upon the settlor's death and after the payment of any inheritance or estate taxes and any funeral expenses or expenses of last illness. After these expenses were paid, Winona's gift should have been distributed and Winona is entitled to any income accrued on its gift from the date all the expenses were paid to the present. The instant record does not reveal which of the above expenses, if any, were paid nor does it reveal the date these expenses were paid. We thus remand this question with directions to the trial court to determine the date the last of these expenses were paid and enter an order awarding Winona any accrued income on its gift from that date to the date the gift is actually paid.

■■ ■ We turn next to the question of attorneys' fees. Only attorneys representing parties having an interest in the construction of the agreement are entitled to reasonable fees from the estate. (*Orme v. Northern Trust Co.* (1962), 25 Ill. 2d 151, 183 N.E.2d 505.) A party named in a testamentary agreement and made a party defendant in a complaint to construe a testamentary agreement, has a sufficient interest in the construction of the agreement to claim reasonable attorneys' fees. (*Hinckley v. Beardsley* (1961), 28 Ill. App. 2d 379, 171 N.E.2d 401.) Each of the parties claiming fees in the instant case clearly meets the above prerequisites.

■■ ■ However, while the question of attorneys' fees in an action to construe a testamentary agreement rests within the sound discretion of the trial court (*Knight v. Bardwell* (1965), 32 Ill. 2d 172, 205 N.E.2d 249), such fees are allowable from the trust estate only if an ambiguity exists, *i.e.*, an honest difference of opinion as to the proper construction of the testamentary agreement. (*In re Estate of Reeve* (1946), 393 Ill. 272, 65 N.E.2d 815.) If an agreement is unambiguous those who file suit for construction to enforce a supposed interest of their own are not entitled to attorneys' fees or expenses out of the estate if unsuccessful. (*Cravens v. Haas* (1943), 318 Ill. App. 447, 48 N.E.2d 611.) If a testamentary agreement is clear and unambiguous in part and ambiguous in another part, attorneys' fees should be allowed only for services rendered in connection with the construction of the ambiguous provision. (*Baum v. Continental Illinois National Bank & Trust Co.* (7th Cir. 1956), 230 F.2d 115.) Fees should not be awarded to one whose services were merely

duplicative of those by one more closely interested. (*Continental Illinois National Bank & Trust Co. v. Llewellyn* (1967), 86 Ill. App. 2d 1, 229 N.E.2d 334.) Moreover, the amount of such fees must be reasonable and commensurate with the services rendered and the amount in controversy. *Logan v. Harris Trust & Savings Bank* (1955), 8 Ill. App. 2d 61, 130 N.E.2d 211.

Considering the issue as to fees in the instant case in light of the above principles, we conclude that the cause should be remanded for renewed consideration as to fees. The trial court found that there was an ambiguity in the trust agreement concerning whether Winona was required to be operating as a school of theology to take the gift. For reasons discussed earlier, we concluded that there was no ambiguity in this regard and found that from the clear wording of the agreement no such requirement was imposed on Winona. Thus, no attorneys' fees should be allowed for services performed in connection with this question. However, the question of lapse was also presented in the trial court and we believe an honest difference of opinion existed as to this question. Thus, the parties were entitled to attorneys' fees for services rendered in litigating this question. In determining the amount of fees to be awarded the trial court is instructed not to allow fees for services merely duplicative of those of a party more closely interested.

We do believe, however, that the trial court erred in allowing only half of the trustee's fees requested. The trustee, in the exercise of its fiduciary duties, was required to file the petition for construction of the trust agreement. In connection with that petition and in the exercise of its fiduciary duties it was required to engage attorneys, review and make available its files, produce witnesses, and perform other tasks. We conclude that the amount of trustee's fees requested by Northern is reasonable under the circumstances and order the trial court to increase the amount of trustee's fees to the $3,000 requested.

For the foregoing reasons, we affirm the order of the trial court allowing Winona to take its $100,000 gift under the trust agreement and reverse that part of its order denying Winona accrued income on the gift. We also affirm the trial court's order finding that attorneys' fees were payable out of the residue of the estate, but reverse and remand with directions as to the issue of attorneys' fees. The trial court is also ordered to increase the trustee's fees awarded from $1,500 to $3,000.

Order affirmed in part, reversed in part, and the cause is remanded with directions.

GOLDBERG, P. J., and O'CONNOR, J., concur.