THE FIRST NATIONAL BANK OF CHICAGO, ILLINOIS, Trustee, Plaintiff-Appellee, *v.* CANTON COUNCIL OF CAMPFIRE GIRLS, INC., *et al.*, Defendants-Appellees.—(THE KICKAPOO COUNCIL OF GIRL SCOUTS *et al.*, Defendants-Appellants.)

First District (3rd Division)   No. 77-766

Opinion filed March 5, 1980.

SIMON, J., dissenting.

Scoby, Biggam & Lunding, of Chicago, and Claudon, Lloyd & Barnhart, Ltd., of Canton, for appellant Canton Park District.

Defrees & Fiske, of Chicago, and Raymiller & Christison, of Peoria (Richard E. Voland, Edward J. Griffin, Marvin S. Helfand, and John M. Cregor, Jr., of counsel), for appellant Kickapoo Council of Girl Scouts.

O'Brien, Redding & Hyde, of Chicago, and Sebo, Bath & Wilson, of Canton (Donald J. O'Brien, Jr., and Michael W. Rathsack, of counsel), for appellee Canton Council of Campfire Girls, Inc.

No briefs filed for other appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, the First National Bank of Chicago, as trustee under an agreement created by the late William P. Ingersoll, brought this action for instructions as to how it should dispose of a share of trust income. Ingersoll had directed the particular share to be paid to "Girl Scouts of Canton, Illinois." There is no legal entity whose formal name meets that description. Plaintiff named three possible recipients as defendants: Canton Council of Campfire Girls, Inc., which claims the share in question as successor to the organization which functioned as the Girl Scouts of Canton; the Kickapoo Council of Girl Scouts, which claims the share as the organization formally chartered by the Girl Scouts of America to function in the county where Canton is located; and the board of trustees of the Canton Park District, which claims the share under a provision of the agreement whereby it was to receive the share of any named organization which ceases to exist. After a trial without a jury, the trial court entered judgment finding that the Canton Council of Campfire Girls was the intended recipient of the share of trust income Ingersoll had directed to be paid to the Girl Scouts of Canton. Kickapoo Council and the Canton Park District each have appealed. The Attorney General has informed this court that he does not intend to file a brief. The undisputed facts follow.

On May 23, 1949, Ingersoll as settlor executed a trust agreement which designated plaintiff as trustee. Under the trust's terms, Ingersoll reserved the income of the trust to himself for life and provided for the disposition of trust assets to various private and charitable beneficiaries after his death. Ingersoll specifically provided for a misnomer of a beneficiary and incorporated the following provisions into the trust agreement:

> "The Donor does not have available the correct corporate name of the organizations referred to above and has used the name by which they are commonly known in the locality which they serve. It is the Donor's intention that payments be made to the legal corporation regardless of what its name may be which is in the

judgment of the trustee, commonly known by the name used herein."

On December 14, 1956, Ingersoll amended the trust instrument and increased the number of beneficiaries. All of them were located in Canton. He included the Girl Scouts of Canton as a beneficiary of $5,000 per year. The amended agreement provided that the named organizations could use the income for such purposes, consistent with their respective charters and bylaws as their respective governing bodies determined. The trust also provided that the annuity to each beneficiary was to continue "as long as such organization shall continue in existence," and if a named beneficiary ceased to exist, the trust income would be paid to the Canton Park District.

On September 28, 1959, Ingersoll again amended the trust, increasing the amount of each annuity and adding a beneficiary. He increased the amount of the gift to the Girl Scouts of Canton to $10,000 per year. On May 31, 1967, Ingersoll restated the trust in its entirety. Instead of specific annual dollar amounts, he provided that the named charitable beneficiaries would receive specified percentages of the net income from the trust. Under the agreement as restated, the Girl Scouts of Canton were to receive 5% of the annual net income of the trust. Ingersoll again amended the trust instrument in 1972. He died in 1973.

Ingersoll, a lifelong resident of the Canton area, was a philanthropist who made annual donations and contributions to local charities, municipal projects, educational developments and religious benefits. His secretary testified that practically all of his contributions were made to local organizations.

After the Girl Scouts were granted a national charter by Congress, local councils were chartered throughout the country. The Kickapoo Council, chartered in 1951, was the locally recognized division of the national Girl Scouts organization. It was headquartered in Peoria and had regional control of a six-county geographical area, including Canton.

Up to 1959 there were several Girl Scout troops in Canton and in the surrounding areas which were collectively known as the Girl Scouts of Canton. In February 1959 the Girl Scout leaders in Canton became involved in a dispute with the Kickapoo Council. As a result they all resigned from the Girl Scouts and formed a new organization known as the Canton Council of Campfire Girls. The new group provided services and activities to the young girls in the Canton area similar to those which had been provided by the Girl Scouts. After the rift, Girl Scouts died out in Canton except for one senior troop which continued in a nearby town for a period of time. Canton girls wishing to become Girl Scouts joined troops which met in nearby towns. Between 1968 and 1973, two Girl Scouts resided in Canton and approximately 16 Girl Scouts resided in

areas near Canton. After 1959, efforts to recruit Girl Scout leaders from the Canton area were unsuccessful, but the Kickapoo Council remained available to provide Girl Scout activities in Canton. No troops could operate in the area without the permission of Kickapoo Council.

During trial, the trial judge refused to admit into evidence testimony of three conversations between Girl Scout leaders and Ingersoll. Offers of proof were made as to the three conversations. At the first conversation in the early 1950's, Ingersoll stated that he would leave money to the Girl Scouts at his death and that he preferred the money to be spent in Central Illinois. Ingersoll stated at the second conversation in 1959 that he was retired and would be unable to help repair the rift between the Kickapoo Council and the local Girl Scout leaders. He was sure the rift would be healed and he still intended to leave money to the Girl Scouts. At the third conversation in 1962 Ingersoll reaffirmed his intention to benefit the Girl Scouts at his death.

At the conclusion of the trial, the trial court ruled that Ingersoll intended to benefit Canton and a local Canton organization which would provide services and benefits to the young ladies of Canton. The court found that the Campfire Girls and no other organization provided those services. Accordingly, the trial court directed the trustee to pay the share of income in question to the Canton Council of Campfire Girls.

The Kickapoo Council of Girl Scouts contends on appeal that it was the intended beneficiary of the share in question. The Canton Park District maintains that it is entitled to the share whereby under the trust it was to receive the share of any named organization which ceases to exist.

■■ The appellee Canton Council of Campfire Girls counters by urging that we may not disturb the trial court's findings unless they are against the manifest weight of the evidence. Construction and the legal effect of an instrument, however, raise a question of law. Consequently where, as here, the material facts are not in dispute, the rule that we may set aside the findings of the trial court only when contrary to the manifest weight of the evidence has no application. (*Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 369 N.E.2d 525; *Blackard Construction Co. v. Berry* (1973), 13 Ill. App. 3d 768, 300 N.E.2d 627.) Consequently, even though we disregard the excluded testimony of Ingersoll's statements of intentions to benefit the Girl Scouts, and we believe the trial court did err in excluding that testimony, we find that the instrument itself and its attendant circumstances require that the disputed share be paid to the Kickapoo Council of Girl Scouts.

■■ The paramount concern in the construction of a trust is to ascertain the intent of the settlor and give effect to that intent insofar as it does not conflict with the law or public policy. (*2416 Corp. v. First National Bank* (1976), 64 Ill. 2d 364, 356 N.E.2d 20; *Harris Trust & Savings Bank v.*

*Taylor* (1977), 49 Ill. App. 3d 349, 364 N.E.2d 349.) In ascertaining the intent of the settlor, consideration must be given to the trust instrument as a whole and the language employed therein. (*American Rubber & Plastic Corp. v. First National Bank of Chicago* (1971), 50 Ill. 2d 172, 277 N.E.2d 840.) The words employed in the trust instrument must be given their plain and ordinary meaning. (*In re Estate of Bentley* (1973), 14 Ill. App. 3d 630, 303 N.E.2d 166.) In determining the proper identity of a charitable beneficiary under a trust instrument, the relevant inquiry is on the surrounding circumstances at the time the instrument was executed. *Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124, 163 N.E.2d 523; *Lydick v. Tate* (1942), 380 Ill. 616, 44 N.E.2d 583.

■■ It was in 1956 that Ingersoll amended the trust instrument to include the "Girl Scouts of Canton, Illinois" as a charitable beneficiary. At that time, and prior thereto, that title was a common name for Canton area girls belonging to Girl Scout troops affiliated and registered with the national Girl Scouts organization. Kickapoo Council was the regional division for the Girl Scouts in the county in which Canton is located. The Girl Scouts were the only such group functioning in Canton. At the time Ingersoll created the gift, the Campfire Girls did not exist in Canton. Thus, the plain meaning of the instrument plus the surrounding circumstances demonstrate that the Girl Scouts were the intended beneficiary of Ingersoll's largesse. Moreover, it is significant that after the rift between Kickapoo Council and the Canton Girl Scout leaders in 1959 which led to the formation of the Campfire Girls group, Ingersoll never changed the beneficiary. Despite the fact that he amended the trust instrument several times in the ensuing years, he retained "Girl Scouts of Canton, Illinois" as the named beneficiary. If Ingersoll had wished a group other than the Girl Scouts to receive the share in question, he certainly would have so provided in the agreement.

■■ In deciding in favor of the Kickapoo Council of Girl Scouts, we find the holding in *Northern Trust Co. v. Winona Lake School of Theology* (1978), 61 Ill. App. 3d 966, 377 N.E.2d 1182, to be instructive. There, between the date of the trust agreement and the date of the settlor's death, a charity, which had operated a school of theology, became insolvent and ceased operating the school. The court held that the charity, although in a semimoribund state, was still a living viable corporation. The court upheld the gift to the charity and, citing 79 Am. Jur. 2d, Wills §178 (1975), stated at pages 405-06:

> "The prevailing rule is that the fact that a religious, charitable, or educational organization named as a beneficiary in a will discontinues its active functions after the execution of the will does not impair the right to take the gift so long as its identity, whether

corporate or associative, continues without dissolution until the death of the testator."

In the present case, the Kickapoo Council was a viable and existing organization, both at the time of the creation of the gift and at the time of Ingersoll's death. It was vested with full corporate powers and was capable of receiving Ingersoll's charitable grant. In fact, it was the organization properly set up to receive gifts to Girl Scouts. Although there were no Girl Scout troops in Canton at the time of Ingersoll's death, Kickapoo Council was very much in existence.

Cases cited by the Canton Council of Campfire Girls in support of a misnomer are inapplicable in the present case. *Tillinghast v. Council at Narragansett Pier* (1926), 47 R.I. 406, 133 A. 662; *Guilford Trust Co. v. LaFleur* (1952), 148 Me. 162, 91 A.2d 17; and *Kingman v. New Bedford Home for Aged* (1921), 237 Mass. 323, 129 N.E. 449, all present fact situations where a bequest or charitable grant had been given to a beneficiary in which the organization to be benefited was not known by the name designated in the will or trust agreement. Additionally, in the present case, Ingersoll provided against a possible misnomer of a charitable beneficiary by designating that the grant was intended to be given to the legal corporation in its correct corporate name. The only legal corporation that could have been intended is the Kickapoo Council of Girl Scouts.

In addition to finding that the plain meaning of the trust agreement and the attendant circumstances mandate the awarding of the share in question to the Kickapoo Council of Girl Scouts, we hold that the trial court erred, in any event, in awarding the share to the Canton Council of Campfire Girls.

■ The trial court ruled that Ingersoll intended to benefit a Canton organization, "regardless of what its name may be," which provided services and benefits to the young ladies of Canton. The court found that only the Campfire Girls provided such services and ruled in favor of the Canton Council of Campfire Girls. In so doing, the court improperly reformed the trust. While the intention of the settlor must be determined, it must be an intention expressed in the instrument. (*Graves v. Rose* (1910), 246 Ill. 76.) Moreover, a finding of general charitable intent from a gift to a specific charity is improper. *In re Estate of Tomlinson* (1975), 30 Ill. App. 3d 502, 333 N.E.2d 663; *Chicago Daily News Fresh Air Fund v. Kerner* (1940), 305 Ill. App. 237, 27 N.E.2d 310.

Ingersoll's charitable grant was not of a general nature to Canton area young girls who participate in activities and receive benefits similar to those provided by the Girl Scouts organization; rather it was a specific grant to the "Girl Scouts of Canton, Illinois" who, at the time the

charitable grant was executed, were affiliated with the national Girl Scouts organization. The Girl Scouts and Campfire Girls organizations are separate and different entities. Each maintains an inherently different identity, regardless of any similar nature of purpose and activities provided by the two organizations. We recognize that Ingersoll intended to benefit the Canton area, but the plain language of the agreement demonstrates that this benefit is to come through the Girl Scouts. While presently there are no Girl Scout troops in Canton, there is no evidence that the Kickapoo Council cannot effectuate Ingersoll's intention. Accordingly, we hold that the Kickapoo Council is the intended beneficiary of the share of income in question under the Ingersoll trust, subject to Ingersoll's intention that the funds be used for the benefit of Canton area Girl Scouts.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for the entry of judgment in accordance with the views expressed herein.

Judgment reversed and cause remanded with directions.

McGILLICUDDY, P. J., concurs.

Mr. JUSTICE SIMON dissenting:

The focus in this case should be on the circumstances existing at the time when Mr. Ingersoll last amended the trust rather than when he created it or when he amended it in 1956.

The settlor's intention is to be determined as of the time of the creation of the trust, to be sure (*Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124, 127, 163 N.E.2d 523, 526.) However, where an existing trust is amended by codicil or restated, the creation is considered to come as of the date of the *last* amendment. That is the settled rule of will construction (*Knight v. Bardwell* (1965), 32 Ill. 2d 172, 175, 205 N.E.2d 249, 251), and it applies to trust construction as well (*Continental Illinois National Bank & Trust Co. v. Griffin* (1970), 124 Ill. App. 2d 334, 337, 260 N.E.2d 281, 283).

The problem in this case therefore is not that of a beneficiary which becomes dormant after the trust is created but is survived by a superior entity, as the majority views it. Rather, the problem is that of a named beneficiary, Girl Scouts of Canton, which did not even exist when the trust was last amended.

The majority looks at the prerift situation in 1956 when the already-created trust was first amended to add a gift to the Girl Scouts of Canton. But in 1967, when the trust clause as it pertained to the Girl Scouts of Canton was last amended, and in 1972 when other provisions of the trust

agreement were amended and the instrument was put into its final form, the rift over autonomy had already occurred and there was no effective Girl Scout organization in Canton. The majority points to evidence, excluded by the trial court, showing that Mr. Ingersoll was aware of that fact, and yet continued to retain the Girl Scouts of Canton as a beneficiary. I do not believe that this leads to the conclusion that the Kickapoo Council was to receive the gift even if no Girl Scout organization existed in Canton at the time of Mr. Ingersoll's death.

His intent can more reasonably be reconstructed and explained in this way: He was aware of the rift between the local (Girl Scouts of Canton) and regional (Kickapoo Council) scouting officials that had transformed the Girl Scouts of Canton into Camp Fire Girls. The trust instrument as a whole shows his intent to benefit the local Canton community. All but three of the beneficiaries were Canton charitable organizations, and of the three that were not, two received gifts specifically restricted to local use. The third beneficiary was the Boy Scout regional council in Peoria, but its gift was limited to use at the London Mills camp located 17 miles from downtown Canton, a camp which benefited many Canton boys. It is reasonable to infer that Mr. Ingersoll made the gift to the Girl Scouts of Canton when he amended the trust in 1967 and did not change it when the trust was amended in 1972, because his hope was that the existence of the fund would provide an incentive to bring the competing scouting factions together. Only a reconciliation between them could replace the blue uniforms of the Camp Fire Girls with the green uniforms of the Girl Scouts on the streets of Canton, and only a settlement would free the trust funds for scouting. This is what I think Mr. Ingersoll hoped to bring about by his 1967 gift to the Girl Scouts of Canton. However, the lure of Mr. Ingersoll's funding was apparently not strong enough to overcome the desire of the Canton scouting leaders for local autonomy, and so the parties must accept the consequence of their intransigence. Since there was no organization of Girl Scouts in Canton, the specific devise to Girl Scouts of Canton failed, and that income share must go to the residual taker, the Canton Park District.

Even if logic and the law did not compel that the funds go to the Canton Park District as the residual taker, I would still dissent from the majority's present formulation of the grant to the Kickapoo Council. The majority has required that the funds be used "* * * for the benefit of Canton area Girl Scouts." Nevertheless, despite the repeated best efforts of the Council, the disturbing factor is that there are now and for 20 years there have been virtually no Girl Scouts in Canton. There seems little possibility that troop leaders can be found in Canton. I believe that the

evidence consisting of the inability of the Girl Scouts to attract girls to their program in Canton for so many years demonstrates that the Kickapoo Council is unable to effectuate Mr. Ingersoll's intention by benefiting Canton through Girl Scouts, for there are none and there are not likely to be any. As the award now stands, must the Kickapoo council squander the funds in futile attempts to draw Canton girls to its program? Must it allow the funds to accumulate until at some undetermined future time it or the Canton community relents and the autonomy issue is settled? Should the Kickapoo Council face the facts in Canton and petition the court for permission to divert the funds to the rest of the six-county region which it serves instead of accumulating them? The majority leaves these questions, which sparked this lawsuit, unanswered. It invites relitigation and probable re-appeal of the suit.

I prefer to settle the issue now. In 1967 the settlor made a gift to Girl Scouts of Canton with the proviso that if there was no such organization in existence, the gift would go instead to the Canton Park District. It is beyond dispute that there are not now nor have there been for 20 years any Girl Scout troops in Canton. The case is simple. The Canton Park District is the proper beneficiary in accordance with Mr. Ingersoll's stated precaution that if any beneficiary should cease to be in existence at any time, its portion of the trust income should be paid to the Canton Park District.